IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DYLAN MITCHELL, DAYNA SCHULTZ, LARISSA WALSTON, MICHAEL RIGGS, IVAN HOLLAND, ANDREW EHRHARDT, ROSS WAGNER, and JAYLEN BUTLER, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 20 C 50285 |
| v. | ) ) | Judge John Z. Lee |
| EUGENE DOHERTY, in his official capacity as the Chief Judge of the 17th Judicial Circuit Court of Illinois; GARY CARUANA, in his official capacity as the Sheriff of Winnebago County; and WINNEBAGO COUNTY, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Winnebago County, Illinois, does not conduct bail hearings over a normal weekend. The question is whether that practice is constitutional.

Plaintiffs are individuals who, at various times during the summer of 2020, were arrested in Winnebago County between Friday night and Saturday morning. Each Plaintiff was jailed over the weekend until Monday afternoon, when a court determined that each was eligible for release. Plaintiffs argue that Winnebago County's failure to hold bail hearings within 48 hours of their arrests violates the Fourth Amendment as interpreted by the Supreme Court in *Gerstein v. Pugh*, 420 U.S. 103 (1975), and *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991).

To remedy this, Plaintiffs have filed a putative class action seeking injunctive relief that would require Winnebago County to conduct a bail hearing within 48 hours for individuals who are arrested and held without a warrant. Plaintiffs also seek damages on an individual basis for violations of their rights caused by their weekends in jail. At this stage, Plaintiffs have filed motions seeking a preliminary injunction and class certification; Defendants, in turn, have moved to dismiss the complaint. For the reasons explained below, the Court dismisses Plaintiffs' first amended complaint without prejudice. Plaintiffs' motions are denied as moot.

## I.    Background[1]

### A.    Facts

On the night of Friday, July 31, 2020, Plaintiffs Dylan Mitchell, Dayna Schultz, and Larissa Walston were attending a protest in support of Black Lives Matter when they were arrested without warrants by the Rockford police. 1st Am. Class Action Compl. ("Am. Compl.") ¶¶ 25–45, ECF No. 17. Plaintiff Ivan Holland also was arrested that night (although the complaint does not specify whether he was a protester). *Id.* ¶¶ 53–58. The police arrested Plaintiff Michael Riggs at another demonstration the following day, *id.* ¶¶ 46–52, and Plaintiffs Ross Wagner, Andrew Ehrhardt, and Jaylen Butler during yet another protest on the

---

[1]    Unless otherwise noted, the following facts are taken from the complaint and are accepted as true at this stage. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

night of Friday, August 21. *Id.* ¶¶ 59–80. All were arrested without warrants. *Id.* ¶¶ 26, 33, 40, 47, 53, 60, 67, 74.

After their arrests on a Friday night or a Saturday afternoon, each of the Plaintiffs was transported to the Winnebago County Jail and detained over the weekend before appearing in court the following Monday at 1:30 p.m. to determine whether and under what conditions he or she would be released on bond. *Id.* ¶¶ 28, 35, 42, 49, 55, 64, 71, 78. Mitchell, Schultz, Walston, and Riggs were released on their own recognizance after their bail hearings. *Id.* ¶¶ 29, 36, 43, 50. Bail for Holland was set at $50,000. *Id.* ¶ 56. And, although detained when this action was filed, Wagner, Ehrhardt, and Butler have since been released on their own recognizances as well. *See* Pls.' Combined Resp. Opp. Def. Chief Judge Doherty's Mot. Dismiss and Reply Supp. Mot. Prelim. Inj. ("Pls.' Combined Resp.") at 2, ECF No. 48.

As Plaintiffs elaborate in their declarations in support of their motion for a preliminary injunction, their weekends in jail caused each of them to suffer, not only a loss of liberty, but "physical pain and suffering, lost wages, and emotional distress." *See* Am. Compl. at ¶¶ 31, 38, 45, 52, 58, 65, 72, 80 (alleging damages); Mitchell Decl. ¶¶ 3, 6, ECF No. 35-1; Riggs Decl. ¶¶ 4–5, ECF No. 35-1; Wagner Decl. ¶¶ 3–5, 7–9, ECF No. 35-1; Walston Decl. ¶¶ 3, 6, ECF No. 35-1 (collectively, "Decls. Pls. Walston, Mitchell, Riggs, and Wagner") (elaborating). For example, while detained, Wagner did not receive any medical treatment for a concussion and a bleeding head wound that he had sustained during his arrest. Wagner Decl.

3

¶¶ 3–5.  Walston was not permitted to take her prescription medication.  Walston Decl. ¶ 6.  And Mitchell was fired from a job she had held for over two years after the police informed her employer of her arrest; she has lost ten to fifteen pounds as a result of anxiety stemming from her detention.  Mitchell Decl. ¶ 6.

## B.  Procedural History

Plaintiffs bring claims under 42 U.S.C. § 1983, seeking redress for violations of their Fourth Amendment rights.  Because Winnebago County falls within Illinois's 17th Judicial Circuit, Plaintiffs sue Eugene Doherty, Chief Judge of the 17th Judicial Circuit Court, in his official capacity as the individual responsible for establishing the schedule for probable cause and bond hearings.  Am. Compl. ¶¶ 2–4.  Plaintiffs also assert a claim against Winnebago County Sheriff Gary Caruana in his official capacity as the individual responsible for managing the Winnebago County Jail and setting policies regarding the custody of pre-trial detainees.  *Id.* ¶¶ 21, 81–86.  And Plaintiffs have joined Winnebago County as a defendant pursuant to *Carver v. Sheriff of LaSalle County*, 324 F.3d 947, 948 (7th Cir. 2003), as the entity financially responsible for the jail and the 17th Judicial Circuit Court.  *Id.* ¶ 22.  (Except where it is necessary to distinguish among them, the Court will refer to Defendants collectively as "Winnebago County," "the County," or "Defendants.")

Mitchell, Holland, Riggs, Schultz, and Walston initially filed their complaint on August 2, 2020, claiming that the County had failed to make a probable cause determination within 48 hours of their warrantless arrests, in violation of the

Supreme Court's mandate in *County of Riverside v. McLaughlin*. Class Action Compl. ¶ 4, ECF No. 1 (citing *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 57 (1991)). In *McLaughlin*, the Supreme Court held that "the Fourth Amendment requires a prompt judicial determination of probable cause as a prerequisite to an extended pretrial detention following a warrantless arrest," and that "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement." 500 U.S. at 47, 56.

However, after filing their complaint, Plaintiffs learned that the County, in fact, does arrange for a judge to make probable cause determinations (albeit on an *ex parte* basis) within 48 hours of an arrest, even on the weekends. Pls.' Am. Mot. Prelim. Inj. ("Mot. Prelim. Inj.") at 2 n.1, ECF No. 19. So, on August 21, Plaintiffs filed an amended complaint.

In addition to adding Plaintiffs Butler, Ehrhardt, and Wagner, Plaintiffs now claim that the Fourth Amendment, as interpreted in *McLaughlin*, not only requires a probable cause determination without 48 hours of a warrantless arrest, but also mandates a judicial determination of bail eligibility within the same time period. Am. Compl. ¶¶ 2–4, 104–05. And so, in Count I, Plaintiffs name Chief Judge Doherty and seek a class-wide injunction that would require the 17th Judicial Circuit Court to hold bail hearings within 48 hours of a warrantless arrest. *Id.* ¶ 105. In Count II, Plaintiffs seek damages against Sheriff Caruana for the named Plaintiffs on an individual basis for their loss of physical liberty,

physical pain and suffering, lost wages, and emotional distress as a result of the alleged constitutional violations. *Id.* ¶ 108.

In conjunction with the amended complaint, Plaintiffs also moved for class certification and a preliminary injunction. *See* Pls.' Am. Mot. Class Cert., ECF No. 18; Mot. Prelim. Inj. Chief Judge Doherty opposed both motions and moved to dismiss Count I. *See* Def. Chief Judge Doherty's Mot. Dismiss Count I, ECF No. 38. Sheriff Caruana moved to dismiss Count II. *See* Def. Sheriff Caruana's Mot. Dismiss Count II, ECF No. 28. The Court held a hearing on Plaintiffs' motion for a preliminary injunction, *see* 11/5/20 Min. Entry, ECF No. 52, and at the Court's direction, Chief Judge Doherty submitted a supplemental filing outlining the schedule for bond hearings in Winnebago County, *see* Suppl. Filing Regarding Bond Hearings, ECF No. 55.

## II.  Legal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When considering motions to dismiss, the Court accepts "all well-pleaded factual allegations as true and view[s] them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). At

the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). For that reason, "[t]hreadbare recitals" that a cause of action exists, "supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Here, Plaintiffs ground their claims in the Fourth Amendment. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It also "establishes the standards and procedures governing pretrial detention in criminal cases." *Williams v. Dart*, 967 F.3d 625, 632 (7th Cir. 2020) (quoting *Manuel v. City of Joliet*, 137 S. Ct. 911, 914 (2017)) (cleaned up).

In determining whether a particular governmental action violates this Amendment, courts "inquire first whether the action was regarded as an unlawful search or seizure under the common law when the Amendment was framed." *Wyoming v. Houghton*, 526 U.S. 295, 299–300 (1999); *see also Gerstein*, 420 U.S. at 114 (noting that historical "common law . . . has guided [our] interpretation of the Fourth Amendment"). If that inquiry yields no answer, courts "must evaluate the search or seizure under traditional standards of reasonableness." *Houghton*, 526 U.S. at 299–300. That evaluation balances "the individual's right to liberty and the State's duty to control crime." *Gerstein*, 420 U.S. at 112.

## III.   Analysis

7

Plaintiffs assert that the Fourth Amendment requires Winnebago County to hold a bail hearing within 48 hours of a warrantless arrest. In support, they rely principally on three sets of cases. First, Plaintiffs posit that the Supreme Court's decisions in *Gerstein* and *McLaughlin* contemplate that a bail determination be made within the same 48-hour period that the Court required for probable cause determinations. Second, they read two cases from the Seventh Circuit as endorsing this interpretation of *Gerstein* and *McLaughlin*. Third, they rely on recent decisions from the Fifth and Tenth Circuits—evaluating claims under the Fourteenth Amendment—for additional support. The Court will address these in turn.

### A.     The Supreme Court's Decisions in *Gerstein* and *McLaughlin*

In *Gerstein v. Pugh*, the Supreme Court considered a challenge to the practice of Dade County, Florida, that permitted prosecutors to charge non-capital offenses by information, without a preliminary hearing and without obtaining leave of court. 420 U.S. at 105. As a result of this practice, any arrestee charged by information could be held "for a substantial period solely on the decision of a prosecutor." *Id.* at 106.

Dade County argued that "the prosecutor's decision to file an information is itself a determination of probable cause that furnishes sufficient reason to detain a defendant pending trial." *Id.* at 117. The Supreme Court disagreed. Although recognizing that a police officer's on-the-scene assessment of probable cause can justify a warrantless arrest and a "brief period of detention to take the

8

administrative steps incident to arrest," the Court held that, once a suspect is in custody "the reasons that justify dispensing with the magistrate's neutral judgment evaporate." *Id.* at 114. The Supreme Court explained:

> The consequences of prolonged detention may be more serious than the interference occasioned by arrest. Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships. Even pretrial release may be accompanied by burdensome conditions that effect a significant restraint of liberty. When the stakes are this high, the detached judgment of a neutral magistrate is essential if the Fourth Amendment is to furnish meaningful protection from unfounded interference with liberty. Accordingly, we hold that the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest.

*Id.* (internal citations omitted).

At the same time, the Supreme Court noted that "adversary safeguards are not essential for the probable cause determination required by the Fourth Amendment." *Id.* at 120. Thus, states are free to employ "a nonadversary proceeding [based] on hearsay and written testimony," *id.*, as long as probable cause is determined by "a judicial officer either before or promptly after arrest," *id.* at 125.

As to what it meant by "promptly after arrest," the Supreme Court answered that question sixteen years later, in *McLaughlin*. 500 U.S. at 47. There, the plaintiffs challenged the policies of Riverside County, California, which had combined probable cause determinations with its arraignment procedures. *Id.* Riverside required arraignments to be conducted "without unnecessary delay and,

in any event, within two days of arrest," but it excluded weekends and holidays from that count. *Id.* As a result, a person arrested late in the week could wait up to five days for a probable cause determination, and a person arrested over the Thanksgiving weekend could wait as long as seven days. *Id.*

In a majority opinion written by Justice O'Connor, the Supreme Court held that Riverside's policy violated the Fourth Amendment. *Id.* at 58–59. More salient for present purposes, in an effort to provide additional guidance on the matter, the Court announced that a probable cause determination is presumptively constitutional if it is made within 48 hours of an arrest—unless the arrestee can demonstrate that the delay was "unreasonabl[e]." *Id.* at 56. A delay is unreasonable if, for example, it was "for the purpose of gathering additional evidence to justify the arrest, [was] motivated by ill will against the arrested individual, or [was] delay for delay's sake." *Id.* After 48 hours, "the burden shifts to the government to demonstrate the existence of a *bona fide* emergency or other extraordinary circumstance" to justify the delay. *Id.* at 57. The Supreme Court specifically noted that an intervening weekend does not qualify as an extraordinary circumstance. *Id.*

Justice Marshall filed a dissenting opinion in which Justices Blackmun and Stevens joined. Justice Scalia also dissented, writing separately. He argued that "promptly after arrest" means "upon completion of the 'administrative steps incident to arrest.'" *Id.* at 65 (Scalia, J., dissenting) (quoting *Gerstein*, 420 U.S. at 114). As such, Justice Scalia believed that

10

> absent extraordinary circumstances, it is an "unreasonable seizure" within the meaning of the Fourth Amendment for the police, having arrested a suspect without a warrant, to delay a determination of probable cause for the arrest either (1) for reasons unrelated to arrangement of the probable-cause determination or completion of the steps incident to arrest, or (2) beyond 24 hours after the arrest.

*Id.* at 70.

But the majority of the Court rejected this 24-hour rule, noting that, while *Gerstein* required every state to provide prompt determinations of probable cause, *Gerstein* also stood for the proposition that "the Constitution does not impose on the States a rigid procedural framework. Rather, individual States may choose to comply in different ways." *Id.* at 53 (majority opinion). Imposing a 24-hour rule, in the Court's view, would leave "no room whatsoever for 'flexibility and experimentation by the States.'" *Id.* at 54 (quoting *Gerstein*, 420 U.S. at 123). For instance, it would make it impossible to "[i]ncorporat[e] probable cause determinations 'into the procedure for setting bail or fixing other conditions of pretrial release'—which *Gerstein* explicitly contemplated." *Id.* (quoting *Gerstein*, 420 U.S. at 124).

By contrast, the majority observed, a period of 48 hours would be sufficient to permit States to balance (on the one hand) the burden of "introducing further procedural complexity into an already intricate system," *id.* at 53, against (on the other) the interest of an arrestee in a prompt determination of probable cause, *see id.* at 55 (noting that a state "has no legitimate interest in detaining for extended periods individuals who have been arrested without probable cause"). That said,

11

where States choose to combine probable cause determinations with other proceedings, such proceedings still must be performed "promptly." *Id.* at 58. And so, "[o]nly those proceedings that arise very early in the pretrial process—such as bail hearings and arraignments"—are "candidates for combination" with the probable cause determination. *Id.* And, "[e]ven then, every effort must be made to expedite the combined proceedings." *Id.*

Plaintiffs read *McLaughlin* to say that a bail determination must be held within 48 hours of an arrest. *See* Pls.' Combined Resp. at 5–6 ("*McLaughlin* is properly read as holding that the reason a *shorter* time frame than 48 hours isn't required for a probable cause determination was that there would be administrative efficiency in combining probable cause determinations with bail determinations—the presumption being that bail determination must also occur within 48 hours"). But this is incorrect.

The Supreme Court in *McLaughlin* did not say that a bail hearing must be held within 48 hours of an arrest. Rather, the Court said that a bail hearing must occur within 48 hours of an arrest, if it is *combined* with a probable cause determination. This is because *Gerstein* requires that a probable cause determination be made "promptly" after an arrest. Neither *Gerstein* nor *McLauglin* addressed the timing of a bail hearing where, as here, a probable cause determination is made separately within the 48-hour time period.

Furthermore, to the extent that Plaintiffs take issue with Winnebago County's practice of allowing judicial officers to make probable cause

12

determinations over the weekend on an *ex parte* basis, this too is unavailing. After all, *Gerstein* explicitly held that *ex parte* determinations of probable cause based on hearsay and written testimony are constitutionally acceptable. 420 U.S. at 120.

For their part, Plaintiffs rely heavily on *Gerstein*'s commentary on the ills of unnecessary pretrial detention (concerns that are reiterated in *McLaughlin*). Pls.' Combined Resp. at 13 (citing *McLaughlin*, 500 U.S. at 52). In particular, the Supreme Court worried that "prolonged detention based on incorrect or unfounded suspicion may unjustly 'imperil [a] suspect's job, interrupt his source of income, and impair his family relationships.'" *McLaughlin*, 500 U.S. at 52 (quoting *Gerstein*, 420 U.S. at 114)). But the Supreme Court was primarily concerned with such consequences flowing to "those so blameless that there was *not even good reason to arrest them*," *McLaughlin*, 500 U.S. at 71 (Scalia, J., dissenting) (emphasis added); those whose arrests were "based on [an] *incorrect* . . . suspicion," *id*. at 52 (majority opinion) (emphasis added); and those whose liberty was subjected to "*unfounded* interference," *Gerstein*, 420 U.S. at 114 (emphasis added). In other words, the Supreme Court in these cases was addressing individuals whose arrests were not supported by probable cause—not individuals, like Plaintiffs, who have had a probable cause determination and were awaiting a judicial determination as to pretrial release. *Cf.* 725 Ill. Comp. Stat. 5/110-5 (instructing courts to consider, for example, "the nature and circumstances of the offense charged," the "conditions necessary to reasonably assure the appearance

of the defendant for further court proceedings," and "the financial ability of the accused.").

As the Supreme Court urged, "police should make every attempt to minimize the time a presumptively innocent individual spends in jail." *McLaughlin*, 500 U.S. at 58. And there is no doubt that this case demonstrates how pretrial detention can have serious consequences for all detainees. *See generally* Decls. Pls. Walston, Mitchell, Riggs, and Wagner. But on their own terms, *Gerstein* and *McLaughlin* do not require a bail hearing within 48 hours of an arrest, as Plaintiffs claim.[2]

## B. The Seventh Circuit's Decisions in *Paine* and *Bridewell*

Plaintiffs next argue that the Seventh Circuit has twice interpreted *McLaughlin* as mandating a bail determination within 48 hours—first in *Paine v. Cason*, 678 F.3d 500 (7th Cir. 2012), *as amended on denial of reh'g and reh'g en banc* (May 17, 2012); and then in *Bridewell v. Eberle*, 730 F.3d 672 (7th Cir. 2013).

Defendants respond that the passages upon which Plaintiffs rely are *dicta* and, thus, nonprecedential. A *dictum* is "a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding—that, being peripheral, may not have received the full and careful

---

[2] Plaintiffs also point to a comment in *Atwater v. City of Lago Visa*, a more recent Supreme Court case, that upheld the constitutionality of custodial arrests for misdemeanors. 532 U.S. 318, 323 (2001). In that decision, the Court noted that it was not "atypical" for individuals arrested for misdemeanor offenses to be given "a prompt opportunity to request release." *Id.* at 352. But that proposition falls short of *requiring* a bail hearing to take place within 48 hours of an arrest.

14

consideration of the court that uttered it." *United States v. Crawley*, 837 F.2d 291, 292 (7th Cir. 1988). When determining whether a statement is a *dictum*, it is important to "ask what reasons there are against . . . giving weight to [the] passage." *Id.* "One is that the passage was unnecessary to the outcome of the earlier case and therefore perhaps not as fully considered as it would have been if it were essential to the outcome." *Id.* "[A]nother reason is that the passage was not grounded in the facts of the case and the judges may therefore have lacked an adequate experiential basis for it; another, that the issue . . . was not refined by the fires of adversary presentation." *Id.* at 292–93. These reasons all address the core issue: whether the statement was a "fully measured judicial pronouncement." *Id.* at 293.

Turning to the two cases cited by Plaintiffs, in *Paine v. Cason*, the plaintiff, Christina Eilman,[3] brought a civil rights action under 42 U.S.C. § 1983. 678 F.3d at 507–09. She had been arrested by the Chicago police as a result of erratic behavior she had displayed while experiencing a manic bipolar episode. *Id.* at 503. About a day and a half after her arrest, Eilman—still in the throes of her manic episode—was released on her own recognizance in a high-crime neighborhood ninety minutes before sunset. *Id.* at 504–05. Due to her impaired state, Eilman was raped at knifepoint in a seventh-floor apartment approximately five hours after her release. *Id.* at 505–06. When she attempted to flee, Eilman fell from the

---

[3]     Technically, Eilman's mother brought the suit on her daughter's behalf, because Eilman suffered brain damage due to the events giving rise to the case. *Paine*, 678 F.3d at 506.

apartment window and suffered permanent brain damage. *Id.* at 506. In her suit against the police, Eilman argued, among other things, that she had a right to be detained at the jail until her manic episode had passed or until she had received appropriate medical treatment. *Id.* at 507–09.

The Seventh Circuit concluded that the qualified immunity doctrine precluded liability under Eilman's "right to be detained" theory. *Id.* at 509. In reaching that conclusion, the court noted that such a right would conflict with the plaintiff's rights under *McLaughlin*, reasoning that

> a "right to be detained for medical care" would put police in a bind. Evidence in *Portis v. Chicago*, 613 F.3d 702, 704 (7th Cir. 2010), suggests that 10% of all persons arrested in Chicago are drunk or high on drugs, and a similar portion may have some mental illness. Existing law creates a right to be released on bail (for bailable crimes) as promptly as possible, with 48 hours as the outside time before presentation to a judicial officer who can make an authoritative decision. *See County of Riverside v. McLaughlin*, 500 U.S. 44 (1991). When it is possible, police who do not need to hold someone for an appearance in court must release people faster . . . . A competing "right to be detained" would put police in a damned-if-you-do, damned-if-you-don't situation.

*Id.* at 508.

Plaintiffs point to this passage to argue that the Seventh Circuit has adopted their preferred reading of *McLaughlin*. But, a page later, the *Paine* court explicitly stated that it "need not and [does] not decide whether—and, if so, when— there is a constitutional right to have custody prolonged so that more or better medical care may be provided." *Id.* at 509. This is so, noted the court, because "[t]his is a qualified-immunity appeal, and the critical question is whether

16

plaintiff's claim rests on a 'clearly established' right." *Id.* Thus, the *Paine* court's interpretation of *McLaughlin* is "not addressed to the question before the court or necessary for its decision"; in other words, it is a *dictum*. *See Crawley*, 837 F.2d at 292.

In *Bridewell v. Eberle*, the plaintiff, an arrestee, filed a § 1983 claim, asserting that the police had waited too long to present her to a court after her arrest. 730 F.3d at 676. Plaintiff sought damages under *McLaughlin* for the 63 hours that she had waited in jail before her initial appearance and probable cause determination. *Id.* But, despite the clear *McLaughlin* violation, the Seventh Circuit rejected her claim, holding that she could not prove an injury because she was not entitled to bail, and there was probable cause to support her arrest. *Id.* at 676–77. The court reasoned that "[i]f the police had complied with [*McLaughlin*], she would have learned these things a little sooner but would have remained in jail. This means that she was not injured by the delay." *Id.*

In reaching that conclusion, the Seventh Circuit made two statements that Plaintiffs highlight. First, it noted that "[*McLaughlin*] holds that the fourth amendment allows no more than 48 hours for the police to get a magistrate's approval of a suspect's continued detention." *Id.* at 676. Given *McLaughlin*'s holding, however, the Seventh Circuit in writing "approval of . . . detention" was likely referring to a probable cause determination, so this sentence does not help Plaintiffs.

In another passage cited by Plaintiffs, the court in *Bridewell* also noted:

17

> The Supreme Court observed in [*McLaughlin*] that the reason for requiring suspects in custody to be taken before a magistrate promptly is to ensure that detention based on "incorrect or unfounded suspicion" is short-lived, 500 U.S. at 52, and that persons properly arrested but entitled to bail can be released promptly.

*Id.* But it is notable that the citation to *McLaughlin* is placed before the Seventh Circuit's comment about release on bail, which suggests that the panel did not believe that *McLaughlin* stands for the second proposition. What is more, the court's mention of bail "could have been deleted without seriously impairing the analytical foundations of the holding"—there, that the plaintiff could not prove injury—meaning that this remark, too, is a *dictum. See Crawley*, 837 F.2d at 292. And, in case there was any doubt, the Seventh Circuit in *Bridewell* (as it did in *Paine*) explicitly declined to decide the merits of the plaintiff's timeliness claims. *See Bridewell*, 730 F.3d at 676 ("We need not decide whether Bridewell has adequately demonstrated that her claim differs from the one resolved in *Dunn* [*v. City of Chicago*, 231 F.R.D. 367 (N.D. Ill. 2005)], because she cannot show injury.").

Furthermore, the Supreme Court has expressed significant unease with the potential intrusion into state government that claims challenging the timeliness of criminal proceedings could bring. In *McLaughlin*, for example, the Supreme Court emphasized that courts must give "proper deference to the demands of federalism" when considering the widely varied and "intricate system[s]" of state criminal procedures. 500 U.S. at 53. Indeed, one goal of *McLaughlin* was to get federal judges out of the business of "making legislative judgments and overseeing local jailhouse operations." *Id.* at 56.

18

Thus, given that the Seventh Circuit has yet to directly consider the question of when the Constitution requires a bail hearing and the question raises significant issues of federalism, the Court finds that substantial reasons caution against "giving weight" to the *dicta* in *Paine* and *Bridewell* on which Plaintiffs rely. *See Crawley*, 837 F.2d at 292.

## C. The Fifth and Eleventh Circuits' Decisions in *Walker* and *ODonnell*

Finally, Plaintiffs turn to two out-of-circuit cases to support their reading of *McLaughlin*—*Walker v. City of Calhoun*, 901 F.3d 1245 (11th Cir. 2018), *cert. denied*, 139 S. Ct. 1446 (2019); and *ODonnell v. Harris County*, 892 F.3d 147 (5th Cir. 2018). Neither does so.

In *Walker,* the plaintiff filed a lawsuit against the city on behalf of a putative class of indigent individuals who had been arrested on misdemeanor charges, challenging the city's practice of requiring misdemeanor arrestees to pay a standard $160 cash bond or be detained. 901 F.3d at 1251–52. Favoring non-indigent arrestees in this manner, the plaintiff claimed, violated the Fourteenth Amendment by "jailing the poor." *Id.* at 1252.

But the Eleventh Circuit rejected this claim, ruling that the city could permissibly hold indigent arrestees for up to 48 hours before setting bail at a judicial hearing—even if other arrestees could have obtained their release sooner by paying a bond. *Id.* at 1266. The Eleventh Circuit reasoned:

> Under *McLaughlin*, the City can presumptively hold a person for 48 hours before even establishing probable cause—that is, without even proving that it has evidence that he has committed a crime. It stands to reason that

19

> that the City can take the same 48 hours to set bail for
> somebody held *with* probable cause . . . . [Thus,]
> indigency determinations for purposes of setting bail are
> presumptively constitutional if made within 48 hours of
> arrest.

*Id.* Contrary to Plaintiffs' contention, then, the Eleventh Circuit in *Walker* did not

hold that *McLaughlin* requires a bail hearing within 48 hours of an arrest, only

that a bond hearing within that timeframe would be presumptively constitutional.

Similarly, in *ODonnell*, the plaintiff filed a class action alleging that the

county's system for setting bail for indigent misdemeanor arrestees violated Texas

statutory and constitutional law, as well as the due process and equal protection

clauses of the Fourteenth Amendment. 892 F.3d at 152. The Fifth Circuit first

found that the Texas constitution creates a liberty interest in bail by providing

that "[a]ll prisoners shall be bailable by sufficient sureties" (with limited

exceptions that did not apply). *Id.* at 158 (citing Tex. Const. art. 1, § 11). And it

agreed with the plaintiff that Harris County's existing procedures were not

sufficient to protect that state right because "secured bail orders [we]re imposed

almost automatically on indigent arrestees . . . . [in an] amount that detain[ed] the

indigent." *Id.* at 159.

That said, the Fifth Circuit went on to hold that the district court's

injunction, which required a bail hearing within 24 hours, was "too strict under

federal constitutional standards." *Id.* at 160. In so doing, the Fifth Circuit noted

that *McLaughlin* had interpreted *Gerstein* "as establishing a right to a probable

cause hearing within 48 hours." *Id.* The Fifth Circuit then added that

"*McLaughlin* explicitly included bail hearings within this deadline," and concluded

20

that "the federal due process right entitles detainees to a [bail] hearing within 48 hours," attributing that proposition to *McLaughlin*. *Id.*

Although these two sentences from *ODonnell* appear to support Plaintiffs' reading of *McLaughlin*, the Court respectfully declines to follow it for two reasons. First, for the reasons explained, this is an erroneous reading of *McLaughlin*. Second, the issue before the court was whether the district court's injunction requiring a bail hearing within 24 hours of an arrest was constitutionally mandated. Having answered in the negative, the Fifth Circuit had no occasion to fully consider what period beyond the 24 hours would pass constitutional muster. And so, the Fifth Circuit's truncated treatment of *Gerstein* and *McLaughlin* (and its misapprehension of *McLaughlin*) is understandable within the posture of that case.

In sum, for the reasons explained, the Court rejects Plaintiffs' arguments that existing authority establishes a Fourth Amendment right to a bail hearing within 48 hours of a warrantless arrest.

## D. Remaining Arguments

Given the absence of controlling law, the Court is left to consider whether the delays Plaintiffs experienced between their arrests and subsequent bail hearings in this case were "unreasonable" under the Fourth Amendment. *See* U.S. Const. amend. IV; *Houghton*, 526 U.S. at 299–300 (courts "must evaluate the search or seizure under traditional standards of reasonableness").

21

In considering what is reasonable, the interpretation of the Fourth Amendment is often guided by historical common law. *See Gerstein*, 420 U.S. at 114. For example, in *McLaughlin*, Justice Scalia noted that one of the most important "traditional protections against unlawful arrest afforded by the common law . . . . was that a person arresting a suspect without a warrant must deliver the arrestee to a magistrate 'as soon as he reasonably can.'" 500 U.S. at 60–61 (Scalia, J., dissenting) (quoting 2 M. Hale, Pleas of the Crown 95 n.13 (1st am. ed. 1847)). But the historical analysis in *McLaughlin* and *Gerstein* was focused on the lawfulness of the *arrest*—in other words, whether the arrest was supported by probable cause—not the timing of *bail*. *See id*.; *Gerstein* 420 U.S. at 114–15. And Plaintiffs do not make a separate historical argument to support their claim. *Cf. United States v. Barr*, 960 F.3d 906, 916 (7th Cir. 2020) ("It is not [the court's] job to do the legal research that [Plaintiffs] ha[ve] omitted." (citation omitted)).

In fact, Plaintiffs' only argument that does not rely on *McLaughlin* is that some upper time limit must be necessary to protect presumptively innocent arrestees from "continued detention for multiple days." *See* Pls.' Combined Resp. at 13. Plaintiffs' brief does not specify what it means by "multiple days," but the amended complaint provides a more precise timeframe, alleging that the named Plaintiffs were detained for between 48.5 and 67.25 hours.[4] Am. Compl. ¶¶ 25–

---

[4]     Plaintiff Riggs was arrested at approximately 1:00 p.m. on Saturday, August 1, 2020, and he was brought before a judge at 1:30 p.m. on Monday, August 3, 2020, resulting in a 48.5-hour detention. Am. Compl. ¶¶ 47, 49. Plaintiff Holland was arrested at approximately 6:20 p.m. on Friday, July 31, 2020, and he was brought before a judge at 1:30 p.m. on Monday, August 3, 2020, resulting in a 67.25-hour detention. *Id.* ¶¶ 53, 55. The Court also directed the County to submit an affidavit regarding its bond schedule. That affidavit indicates that

80.  The question raised by the amended complaint, then, is whether a period of 67.25 hours between an individual's arrest and his or her bail hearing, without more, is unreasonable under the Fourth Amendment.

Guidance on this topic can be found in decisions by the Supreme Court and Seventh Circuit addressing the length of detentions that are permissible under the Fourteenth Amendment.  In *Baker v. McCollan*, the plaintiff was arrested on a warrant that had been issued for the arrest of his brother.  443 U.S. 137, 140–41 (1979).  The plaintiff brought a § 1983 claim under the Fourteenth Amendment, arguing that his detention for three days without an initial court appearance, where he could argue that his arrest was incorrect, was unconstitutional.  *Id.* at 141–42.  The Supreme Court disagreed.

Discussing *Gerstein*, the Supreme Court first noted that "[s]ince an adversary hearing [to evaluate probable cause] is not required, and since the probable cause standard for pretrial detention is the same as that for arrest, a person arrested pursuant to a warrant issued by a magistrate on a showing of probable-cause is not constitutionally entitled to a separate judicial determination that there is probable cause to detain him pending trial."  *Id.* at 143.

As for the plaintiff's argument that the state had a constitutional duty to assess his protests of mistaken identity before detaining him for three days, the Supreme Court found that, absent an attack on the validity of the warrant, a three-

---

72 hours is the longest that an arrestee could go without a bail hearing.  *See* Decl. Chief Judge Eugene Doherty at 1–2, ECF No. 55-1.

day deprivation of liberty did not violate the Fourteenth Amendment. *Id.* at 143–

44. As the Supreme Court explained,

> mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of "liberty . . . without due process of law." But we are quite certain that a detention of three days over a New Year's weekend does not and could not amount to such a deprivation.

*Id.* at 145.

The Seventh Circuit addressed a similar issue in *Holloway v. Delaware County Sheriff*, 700 F.3d 1063 (7th Cir. 2012). There, the plaintiff was arrested without a warrant on a Tuesday; a probable cause determination was made on Wednesday; and he appeared in an initial hearing on Thursday, where the court ordered him detained and provided the prosecutor with more time to investigate the crime before filing charges. *Id.* at 1066. In the end, however, the prosecutor never filed charges against the plaintiff, and he was released nine days after his arrest. *Id.* at 1067. The plaintiff then filed suit, claiming that his nine-day detention without charges violated the Fourteenth Amendment's due process clause. *Id.* at 1067–68.

"Like in *Baker*," the Seventh Circuit observed, "the Sheriff detained Holloway for only three days without a hearing and without any further investigation into his case." *Id.* at 1070 (citing *Baker*, 443 U.S. at 145). As a result, neither Holloway's 72-hour detention before an initial hearing nor the other actions by the Sheriff violated the Fourteenth Amendment. *Id.* at 1071.

24

Finally, in *Bailey v. City of Chicago*, a probable cause determination was not made until 47 hours after the plaintiff's arrest, and bail was not denied until the day after that. 779 F.3d 689, 693 (7th Cir. 2015). In that case, the plaintiff argued that waiting until the forty-seventh hour to make a probable cause determination should be unconstitutional, because *McLaughlin*'s 48-hour presumption should be reconsidered in light of technological developments since 1991. *Id.* at 696. But the Seventh Circuit rejected that argument—and made no comment about the timing of the plaintiff's bail hearing, which took place many hours later. *Id.*

Rather than supporting Plaintiffs' position that the Constitution mandates a bail hearing for an arrestee within 48 hours of his or her arrest, these decisions suggest that a longer period—something in the realm of 72 hours—might be constitutionally permissible, when the detention is supported by a timely determination of probable cause. Other courts have agreed. *See, e.g.*, *Edwards v. Cofield*, 301 F. Supp. 3d 1136, 1149 (M.D. Ala. 2018) (indigent plaintiff failed to show substantial likelihood of success on the merits of claim that a maximum delay of 72 hours before a bond hearing is unconstitutional under the Fourteenth Amendment); *Farrow v. Lipetzky,* No. 12-cv-06495, 2013 WL 1915700, *22 (N.D. Cal. May 8, 2013) (plaintiffs failed to cite any authority holding that a delay of five to thirteen days for bail hearing violates the Fourteenth Amendment); *Burton v. McCormick,* No. 3:11 CV 026, 2011 WL 1157557, *3 (N.D. Ind. Mar. 29, 2011) (no violation of plaintiff's due process or equal protection rights for failing to hold bail

hearing where an initial hearing was held and plaintiff posted bail three days after arrest).

In the end, what is reasonable under the Fourth Amendment depends on the particular circumstances. *See Ohio v. Robinette*, 519 U.S. 33, 39 (1996) (noting that the Fourth Amendment reasonableness standard is a "fact-specific" inquiry). The examples of unreasonable delay that the Supreme Court named in *McLaughlin*—delay in order to gather additional evidence, delay motivated by individual animus, delay for delay's sake, *see* 500 U.S. at 56—may apply equally to bail hearings as probable cause determinations. But, rather than alleging any specific facts to call into question the reasonableness of Winnebago County's procedures, Plaintiffs ask the Court to adopt a categorical rule mandating a bail hearing within 48 hours of a warrantless arrest. For the reasons stated, Plaintiffs' request is unsupported by the law or the factual allegations in this case.

### IV.    Conclusion

For the reasons set forth above, the Court concludes that Plaintiffs have failed to adequately allege that Winnebago County's procedure of providing a bail hearing more than 48 hours after Plaintiffs' weekend arrests was unreasonable under the Fourth Amendment. As a result, the Court dismisses Count I for failure to state a claim under 42 U.S.C. § 1983 and the Fourth Amendment. And, because Count II depends on the existence of a Fourth Amendment violation, it also must be dismissed. With the operative complaint dismissed, Plaintiffs' motions for a preliminary injunction and class certification are denied as moot. If Plaintiffs

believe they can file an amended complaint that is consistent with this order, they may seek leave to file an amended complaint within 21 days.

**IT IS SO ORDERED.**                    ENTERED: 3/30/21

**JOHN Z. LEE**
**United States District Judge**